STATE of North Dakota, Plaintiff
and Appellee,

v.

Darrell Wayne RED PAINT, a/k/a
Darrell Wayne Clifford Red Paint,
Defendant and Appellant.

Cr. No. 764.

Supreme Court of North Dakota.

Oct. 23, 1981.

Garcia & Garcia, Devils Lake, for defendant and appellant; argued by David Garcia, Devils Lake.

Arne F. Boyum, Jr., State's Atty., Rolla, for plaintiff and appellee.

PAULSON, Justice.

Darrell Wayne Red Paint appeals from a judgment of conviction entered in the District Court of Ward County on January 29, 1981, upon the jury's verdict finding him guilty of two counts of murder. We affirm.

On the afternoon of May 22, 1980, Donald and Bernice Johnson, husband and wife, were shot to death in their farm home located in rural Rolette County. Earlier that same day, two juveniles, Darrell Wayne Red Paint and Daniel C. DeNoyer, had run away from the Lighthouse of Hope, a group home for juveniles located approximately one mile north of the Johnson farm. Upon learning of the disappearance of Red Paint and DeNoyer, Franklin Bell, the executive director of the Lighthouse of Hope, instructed one of his assistants to notify the police. Later that evening, Bell was informed by a deputy sheriff of Rolette County that two murders had been committed and that Red Paint and DeNoyer might have been involved. The deputy sheriff asked Bell where the boys might be going and Bell replied that they would probably go to the home of Gwen Gourneau, Daniel DeNoyer's girlfriend, in St. John, North Dakota.

Several hours later, at approximately 1:00 o'clock on the morning of May 23, 1980, Bell received a telephone call from Mrs. Julia Gourneau, the mother of Gwen Gourneau. Mrs. Gourneau informed Bell that the two boys were at her home and that they wanted to talk with him. Bell immediately went to the Gourneau home and spoke with the boys, who agreed to turn themselves in to the sheriff if Bell drove them to the sheriff's office. The boys left with Bell in his car, and were arrested when police, who had the Gourneau home under surveillance, stopped Bell's car.

Red Paint and DeNoyer were transported by sheriff's deputies to the Rolette County jail in Rolla. Bell rode to the jail in a separate vehicle, and, upon arriving there, Bell asked if he could speak to Red Paint alone. Bell was allowed to speak to Red Paint at that time in the sheriff's private office at the Rolette County jail with no one else present.

At trial, Bell testified that, during the course of his conversation with Red Paint in the sheriff's office, Red Paint admitted that he had shot the Johnsons with a shotgun. Bell also testified, in chambers, that he had suggested to Red Paint that he consult an attorney before making any statements to the law enforcement officers. The record does not reveal, however, whether Bell gave this advice to Red Paint before or after Red Paint admitted the killings to him. When Bell's conversation with Red Paint was concluded, Bell informed Sheriff Bryant Mueller of Red Paint's statement that he had shot the Johnsons.

 The sole issue presented by Red Paint on appeal is whether the district court committed reversible error in allowing Frank Bell to testify at trial regarding his conversation with Red Paint at the Rolette County sheriff's office.[1] The district court

---

1. Although the issue was not raised by the parties in their briefs, at oral argument it was pointed out that Red Paint was not given *Miranda* warnings prior to his admission to Bell at the Rolette County sheriff's office. In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966), the Supreme

Court held that the prosecution may not use statements stemming from "custodial interrogation" of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. The Court defined "custodial interrogation" as "*questioning initiated by law enforcement offi-*

ruled during the trial that Bell's testimony did not fall within the purview of any of the privileges set forth in the North Dakota Century Code and the North Dakota Rules of Evidence, and held that Bell's testimony was admissible. We agree.

At the time of the murder, Bell was the executive director of the Lighthouse of Hope. He had previously served as a state highway patrolman and had briefly been a Rolette County special deputy sheriff. On May 22, 1980, however, Bell was not serving as a law enforcement officer in any capacity, and there is no evidence indicating that Bell was acting on the orders of law enforcement officers during his involvement in the instant case. The district court noted that Bell's duties as executive director of the Lighthouse of Hope were similar to those of a social worker.

Rule 501 of the North Dakota Rules of Evidence states that only those privileges provided for "by constitution or statute or by these or other rules promulgated by the supreme court of this state" are recognized in North Dakota. After perusal of the Constitution, the statutes, and the rules, we find no authority which would require the exclusion of Bell's testimony regarding the conversation which he had had with Red Paint at the Rolette County sheriff's office.

Rule 502, N.D.R.Ev., provides that a client may refuse to disclose, and prevent others from disclosing, confidential communications between the client and "his lawyer or his lawyer's representative". Frank Bell was not at the time of his conversation with Red Paint a "lawyer or a lawyer's representative", as those terms are defined in Rule 502, and Rule 502 is therefore inapplicable.

Rule 505, N.D.R.Ev., states that a person may refuse to disclose and may prevent others from disclosing confidential communications by the person to a clergyman. Bell was not a "clergyman" as that term is defined in Rule 505, and Rule 505 is therefore inapplicable.

Section 31–01–06.1, N.D.C.C., provides that a school counselor who possesses a valid North Dakota guidance credential from the State Department of Public Instruction and who has been duly appointed a counselor for a school system may not disclose confidential communications received in a counseling interview. The record does not indicate that Frank Bell, at the time of his conversation with Red Paint, possessed a valid North Dakota guidance credential. Additionally, he had not been appointed counselor in a school system, and, therefore, § 31–01–06.1, N.D.C.C., does not apply.

The foregoing are the only privileges recognized by constitutional provision, the statutes, or rules in North Dakota which protect relationships similar to the one ex-

cers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way". 384 U.S. at 444, 86 S.Ct. at 1612 [emphasis added]; see *State v. Fields*, 294 N.W.2d 404, 407 (N.D.1980).

There is no evidence indicating that Bell's conversation with Red Paint constituted "questioning initiated by law enforcement officers", and, therefore, the failure to give *Miranda* warnings did not affect the admissibility of Bell's testimony. Other courts presented with similar fact situations have also held that *Miranda* does not apply to interrogations conducted by private individuals. *See, e. g., United States v. Delay*, 500 F.2d 1360, 1364–1365 (8th Cir. 1974); *United States v. Parr-Pla*, 549 F.2d 660, 663 (9th Cir.), *cert. denied* 431 U.S. 972, 97 S.Ct. 2935, 53 L.Ed.2d 1069 (1977); *Gammel v. State*, 259 Ark. 96, 531 S.W.2d 474, 477–478 (1976); *State v. Van Alstine*, 305 Minn. 276, 232 N.W.2d 899, 904 (1975); *State v. LaRose*, 286 Minn. 517, 174 N.W.2d 247, 248

(1970); *State v. Kelly*, 61 N.J. 283, 294 A.2d 41, 43 (1972).

It should also be noted that the right-to-counsel provision of the Uniform Juvenile Court Act, § 27–20–26, N.D.C.C., does not apply in the instant case. Subsection 1 of § 27–20–26 provides in pertinent part that "Counsel must be provided for a child not represented by his parent, guardian, or custodian." In the case of *In the Interest of D.S.*, 263 N.W.2d 114, 120 (N.D.1978), we concluded that § 27–20–26, N.D.C.C., "imposes a mandatory duty to provide counsel for a child at all stages of the proceedings under the Uniform Juvenile Court Act". Bell's conversation with Red Paint in the sheriff's office was not between a law enforcement officer and a suspect and, thus, Red Paint's statement was not given during a stage of the proceedings under the Uniform Juvenile Court Act. Therefore, § 27–20–26, N.D.C.C., is inapplicable.

isting in the instant case between Bell and Red Paint.[2] Because the relationship between Bell and Red Paint fails to fall within the purview of any of the recognized privileges, we conclude that Bell's testimony was not a privileged confidential communication and the district court did not commit error in allowing Bell to testify.

Notwithstanding the fact that Bell's testimony did not fall within any of the recognized privileges, Red Paint urges this court to expand the law of privilege and to create a "quasi-attorney-client privilege" to apply to situations when a private individual gives "legal" advice to a defendant. Red Paint argues that Bell was acting "in the role" of an attorney when he discussed the events which occurred on the evening of May 22, 1980, with Red Paint and advised him to consult an attorney before making any statements; and that, therefore, the same protections afforded to confidential communications between attorney and client should apply here.

Rule 501, N.D.R.Ev., explicitly provides, in pertinent part, that: "Except as otherwise provided by constitution or statute or by these or other rules promulgated by the supreme court of this state, no person has a privilege" to refuse to disclose or prevent another from disclosing any matter. The import of this rule is clear—only those privileges provided for by rule, statute, or constitutional provision are recognized in this State.

■■■ Red Paint argues that the rules of privilege are "out-moded" and should be *liberally* construed. We conclude, however, that rules of privilege should be *narrowly* construed because they are by nature in derogation of the search for truth. *See United States v. Nixon*, 418 U.S. 683, 710,

94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974). As noted by the United States Supreme Court in *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186, 195 (1980):

> "Testimonial exclusionary rules and privileges contravene the fundamental principle that 'the public . . . has a right to every man's evidence.' *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950). As such, they must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' *Elkins v. United States*, 364 U.S. 206, 234, 80 S.Ct. 1437, 1454, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting)."

Those relationships which have been deemed sufficiently important to warrant a rule of privilege have been expressly delineated by rule, statute, and constitutional provision in this State. These provisions will be strictly construed to protect only those relationships which have been deemed to engender a public good which outweighs the principle that all rational means should be employed to ascertain the truth. Although there is a legitimate public interest in protecting confidential communications between an attorney and his client made for the purpose of facilitating the rendition of professional legal services, this public interest does not extend to a situation in which, as in the instant case, a non-attorney gives legal advice to another person.

Courts in other jurisdictions which have addressed the issue have reached the same

---

2. In 1981, the Legislature enacted Chapter 349, S.L. 1981, which provides for an "addiction counselor-client privilege". This statute provides that a client may refuse to disclose, or prevent any other person from disclosing, confidential communications between the client and an addiction counselor who has been certified by the professional standards and certification committee appointed by the State Health Officer. Chapter 349, S.L. 1981, codified as §§ 31–01–06.1 through 31–01–06.4, N.D.C.C., took effect on July 1, 1981, and therefore is inapplicable in the instant case. *See* § 1–02–10, N.D.C.C. (no part of the North Dakota Century Code is retroactive unless it is expressly declared to be so). Even if the statute had been in effect at the time of the occurrences in this case, however, there is no evidence that Bell was a certified addiction counselor, and, therefore, Red Paint's admission to Bell would not have been a privileged confidential communication under the statute.

conclusion. For example, in *State v. Van Landingham*, 283 N.C. 589, 197 S.E.2d 539 (1973), the defendant had made damaging admissions in a telephone conversation with her neighbor, Willardson, a law school graduate who had recently passed the North Carolina Bar examination but who had not yet taken his oath as an attorney nor received his license to practice law. Willardson advised the defendant that he was not an attorney and could not give her legal advice, but suggested that she not say anything to anyone until she had consulted an attorney. The Supreme Court of North Carolina, in rejecting the defendant's contention that her statements to her neighbor, Willardson, had been privileged, stated, in *Van Landingham, supra* 197 S.E.2d at 547, quoting with approval from another North Carolina case, *State v. Smith*, 138 N.C. 700, 50 S.E. 859, 860 (1905), that the attorney-client privilege " 'extends only to such confidential communications as are made to the attorney by virtue of his *professional* relation to the client.' It has no application to an adviser who 'had no legal rights to appear as prisoner's attorney in any court in this State [N.C.] [emphasis in original].' " Similarly, the United States District Court for the Eastern District of Pennsylvania, in *Dabney v. Investment Corporation of America*, 82 F.R.D. 464, 466 (E.D.Pa.1974), held that statements by the defendant to a third-year law student were not privileged, stating that:

> "There is no reason to encourage the relation between client and legal advisor except where the legal advisor has been formally admitted to the office of attorney or counselor as duly qualified to give legal advice."

*See also Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1169–1170 (D.S.C. 1975) (no attorney-client privilege for communications to foreign patent agents who

asserted that they were professional legal advisors); *People v. Wattie*, 253 Cal.App.2d 403, 61 Cal.Rptr. 147, 150–152 (1967) (no privilege for statements made by defendant to fellow inmate who had limited legal training and gave legal advice to many of the inmates); *State Highway Commission v. Earl*, 82 S.D. 139, 143 N.W.2d 88, 92 (1966) (policy underlying attorney-client privilege does not warrant extension to land appraiser hired by one of the parties to the action).

We conclude that it was not error for the trial court to allow Frank Bell to testify about his conversation with Red Paint at the Rolette County sheriff's office because Bell's testimony did not reveal any confidential communications which were privileged under the laws of this State.[3] The judgment of conviction is affirmed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.

---

3. It should be noted that, even if a valid privilege had existed regarding Red Paint's admission to Bell, Red Paint waived his right to assert the privilege when he admitted the killings to a third party. Myron Linden Johnson testified that Darrell Red Paint had admitted the killings to him when Johnson and Red Paint were both confined at the Devils Lake Law Enforcement Center. Rule 510, N.D.R.Ev., provides that the holder of a privilege waives his right to assert the privilege if he voluntarily discloses any significant part of the privileged matter. Red Paint's admission to Johnson therefore constituted a waiver of any privilege which he might have asserted regarding Bell's testimony.