**STATE of North Dakota, Plaintiff and Appellee,**

v.

**John Lee COPELAND, Defendant and Appellant.**

**Cr. No. 890051.**

Supreme Court of North Dakota.

Nov. 28, 1989.

Ronald W. McBeth (argued), Asst. State's Atty., Wahpeton, for plaintiff and appellee.

Krassin Law Office, Wahpeton, for defendant and appellant; argued by Don R. Krassin.

ERICKSTAD, Chief Justice.

John Lee Copeland has appealed from a criminal judgment entered upon conviction of the crime of corruption of a minor,[1] two orders denying his motions for a new trial, and an amended criminal judgment. We affirm.

On July 19, 1988, Copeland was tried before the court without a jury on charges of gross sexual imposition and corruption of a minor. The trial court issued its memorandum opinion on August 25, 1988, finding Copeland guilty of corruption of a minor and not guilty of gross sexual imposition. A criminal judgment dated October 31, 1988, was filed on November 4, 1988.

On November 7, 1988, Copeland filed the following motion dated November 3, 1988:

"Comes now the Defendant, John L. Copeland, and moves the Court for an Order appointing an attorney to represent me for purposes of appeal and other Motions. Further, Defendant requests a 30 day enlargement of time, pursuant to Rule 45(b) of the North Dakota Rules of Criminal Procedure, to file a Motion for New Trial and appeal of the criminal conviction."

By order of November 10, 1988, the trial court appointed an attorney and "granted a 30–day enlargement of time, pursuant to Rule 45(b) of the North Dakota Rules of Criminal Procedure, to file a motion for new trial and appeal of the criminal conviction, to the extent permitted by said Rule."

Copeland moved for a new trial on December 9, 1988. The trial court denied that motion on January 23, 1989, and an amended criminal judgment was filed on January 26, 1989. Copeland filed a motion for new trial on the ground of newly discovered evidence on February 1, 1989. The trial court denied that motion in an order dated February 3, 1989.

Copeland appealed the conviction, the orders denying his motions for new trial, the judgment and the amended judgment, raising the following issues:

"I.

"WAS MR. COPELAND'S LAWYER CLIENT PRIVILEGE VIOLATED BY DISCLOSURES TO THE PROSECUTION AND THE COURT BY THERAPIST PAUL WHITE?

"II.

"WAS THE EVIDENCE SUFFICIENT TO CONVICT MR. COPELAND?

"III.

"WAS MR. COPELAND DEPRIVED OF A FAIR TRIAL BY GUARDIAN AD LITEM BONNIE RASMUSSON NOT BEING SEQUESTERED AND TESTIFYING AGAINST MR. COPELAND?

"IV.

"DID THE COURT ABUSE ITS DISCRETION IN NOT ORDERING A NEW TRIAL WHEN NEWLY DISCOVERED EVIDENCE ELIMINATED PROOF OF AN ESSENTIAL ELEMENT OF THE OFFENSE?"

The State contends that the only issue properly before us is the trial court's denial of Copeland's motion for a new trial based on newly discovered evidence. The State argues that a timely motion for a new trial pursuant to Rule 33(c), N.D.R.Crim.P., should have been filed within ten days of the trial court's finding of guilt on August 25, 1988; that no such motion was filed until December 9, 1989; and that Copeland's untimely motion for a new trial could not suspend the running of the time to appeal from the criminal judgment. Copeland argues that there was no "finding of guilt" until the judgment was entered.

Rule 33(c), N.D.R.Crim.P., provides that a motion for new trial on any ground other than newly discovered evidence or jury misconduct "shall be made within 7 days after verdict or finding of guilt or within such

---

1. Section 12.1–20–05(1), N.D.C.C., provides: "An adult who engages in a sexual act with another person ... is guilty of a class A misdemeanor if the other person is a minor, fifteen years of age or older."

further time as the court may fix during the 7–day period." Rule 33(c) is derived from Rule 26.04, Minn.R.Crim.P. (Explanatory Note, Rule 33, N.D.R.Crim.P.), which appears to have been drawn, in part, from Rule 33, F.R.Crim.P.[2] Thus, we deem it appropriate to consider construction of Rule 33, F.R.Crim.P., as an aid to interpreting Rule 33(c), N.D.R.Crim.P.

"The time limitations of Rule 33 are jurisdictional. The court is without power to consider an untimely motion for a new trial. It cannot extend the time in which to move for a new trial except as specifically provided in Rule 33 itself." 3 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 558, pp. 360–361 (1982). *See also United States v. Brown*, 587 F.2d 187 (5th Cir.1979); *United States v. Beran*, 546 F.2d 1316 (8th Cir.1976). "If trial was to a jury, the time runs from the return of the verdict rather than the date of sentence. If trial was to the court, the time runs from the entry of the court's finding that defendant is guilty." 3 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 558, pp. 364–365 (1982). *See also Pugh v. United States*, 197 F.2d 509, 511 (9th Cir.1952), where the court said:

"We do not agree with the district court's opinion that a finding of guilt ... must be deemed made on the day of entry of judgment. If this were the law, in every case the 5 [now seven] days for such a motion for a new trial would run from the entry of the judgment and the beginning of the running of time from the making of the finding of guilt provided in Rule 33 would be an absurd superfluity."

■ In its memorandum opinion issued on August 25, 1988, the trial court said: "I find the defendant ... guilty of the crime of corruption of a minor." We conclude that that finding was a "finding of guilt" commencing the seven-day period within which Copeland was permitted to make a motion for a new trial on grounds other than newly discovered evidence or jury misconduct. Copeland's December 9, 1989, motion for new trial was, therefore, untimely, as was his November 7, 1989, request for an enlargement of the time within which to file a motion for new trial. Because that request was not made within 7 days after the trial court's finding of guilt, the trial court had no power to enlarge the time.

■ We have held, however, that a defendant may appeal from an amended judgment even though the appeal was not filed within 10 days of the entry of the original judgment. *See State v. Chyle*, 297 N.W.2d 409 (N.D.1980). Copeland filed a timely notice of appeal from the amended judgment. All of the issues raised in that appeal are, therefore, properly before us.

## I.

■ While representing Copeland in a pending divorce, before any charges were brought against Copeland, Copeland's attorney[3] arranged to have Copeland meet with Paul White, a social worker employed by Cass County Social Services. Copeland disclosed his sexual relationship with the minor victim involved in this case to White, who reported the matter to the State's attorney. White also testified at trial. Copeland contends that White's testimony was admitted in violation of Rules 502 and 503, N.D.R.Ev.

Rule 502, N.D.R.Ev., provides in part: "RULE 502. LAWYER–CLIENT PRIVILEGE

"*(a) Definitions.* As used in this rule:

\* \* \* \* \* \*

"(4) A 'representative of the lawyer' is one employed by the lawyer to assist the lawyer in the rendition of professional legal services.

---

2. The Comment to Rule 26, Minn.R.Crim.P., published in 49 Minn.Stats.Ann. (1989 Supp. at 159), states that "Rule 26.04, subd. 1(3) (Time for Motion) is based upon Minn.R.Civ.P. 59.03 and F.R.Crim.P. 35." Rule 26.04, subd. 1(3), Minn.R.Crim.P., and Rule 33, F.R.Crim.P., however, share "verdict or finding of guilty" as the point from which the time for filing a motion for new trial begins to run, while Rule 35, F.R.Crim.P., deals with correction of sentences.

3. Copeland is represented by a different attorney in this appeal.

"(5) A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

"*(b) General Rule of Privilege.* A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client."

The Explanatory Note elaborates:

"If the benefits this rule of privilege offers to the judicial system—that is, a client's frank and open disclosure of facts to his attorney—are to be realized, then a client need be assured that confidential communications made to those necessarily involved in the performance of legal services will not be disclosed. Subdivision (a)(4) achieves this by including, as privileged communications, those made to a lawyer's representative. As used in this rule, the term 'employed' is not limited to those employed for compensation."

*See* Annot., *Applicability of Attorney-Client Privilege To Communications Made In Presence Of Or Solely To Or By Third Persons,* 14 A.L.R. 4th 594 (1982). However, "the burden of showing that the communication is privileged rests on the one who seeks to have it excluded." 3 *Jones on Evidence* § 21:9, p. 769 (1972). Rules of privilege are narrowly construed because they are by nature in derogation of the search for truth. *Knoff v. American Crystal Sugar Co.,* 380 N.W.2d 313 (N.D. 1986); *State v. Red Paint,* 311 N.W.2d 182 (N.D.1981).

In denying Copeland's motion to suppress White's testimony, the trial court concluded that communications between Copeland and White "were not for the purpose of 'facilitating the rendition of professional legal services' but, instead, were for the purpose of attempting to correct Mr. Copeland's sexual problems." We agree. In a pretrial affidavit,[4] Copeland's attorney said that he "contacted Paul White of Cass County Social Services regarding the evaluation and treatment of Mr. Copeland in their incest program." The affidavit did not refer to any "purpose of facilitating the rendition of professional legal services" to Copeland. At trial, in objecting to testimony by White, Copeland's attorney argued:

"I'm going to raise the privilege again, Your Honor. I believe this is privileged information that was related to Mr. White by Mr. Copeland while Mr. Copeland was acting under the belief that Mr.

---

4. The affidavit stated:

"I am the attorney for the Defendant, John Lee Copeland.

"I was acting in that capacity prior to any criminal charges being lodged against this Defendant.

"I contacted Paul White of Cass County Social Services regarding the evaluation and treatment of Mr. Copeland in their incest program pursuant to my arrangements, and at my specific request, Mr. Copeland met with Mr. White and revealed to him certain incriminating facts regarding the present criminal prosecution.

"I verily believe that Mr. White communicated these facts to the Richland County At-

torneys office, Richland County Sheriff's Office and to the Richland County Social Services. He further counseled Mr. Copeland to have his children make an incriminating statement to other authorities as 'part of his treatment'. The whole part and parcel of John Copeland's attempt to receive help and treatment has resulted in felony charges being lodged against him.

"Mr. White's actions are clearly violative of the privileged information of the phyco therapist [sic] and the client and in the alternative are violative of the attorney-client relationship for the reasons that Mr. White was acting as a representative of the Defendant's lawyer in his contact with Mr. Copeland."

White was a psychotherapist, and I think anything he told him would be privileged, and it was in accordance with an appointment I set up, and it was designed to evaluate Mr. Copeland's capacity for a possible defense in a criminal action, and that he was a representative of an attorney."

The statement by Copeland's trial attorney that the appointment he set up with White "was designed to evaluate Mr. Copeland's capacity for a possible defense in a criminal action," is wholly inconsistent with his pretrial affidavit stating that he "contacted Paul White ... regarding the evaluation and treatment of Mr. Copeland in their incest program." Copeland's attorney contacted White while representing Copeland in a divorce before any criminal charges were brought. The trial court determined that "White was an employee of Cass County Social Services and, by inference, not engaged in the business of assisting attorneys and the rendition of legal services." We believe the trial court could have reasonably concluded that Copeland did not prove that his communications to White were "confidential communications made for the purpose of facilitating the rendition of professional legal services" to Copeland and, therefore, privileged from disclosure by Rule 502, N.D.R.Ev., as distinguished from communications made for evaluation and treatment alone, which are not privileged from disclosure by Rule 502. Copeland did not meet his burden of showing that his communications to White were privileged. The trial court therefore did not abuse its discretion by admitting White's testimony.

■ Copeland also contends that under Rule 503, N.D.R.Ev., White is a psychotherapist and the rule requires the exclusion of White's testimony. Rule 503(b) provides a patient with a privilege to refuse to disclose or to prevent others from disclosing confidential communications among the patient and his psychotherapist. Copeland contends that Rule 503 "by definition makes Paul White a 'psychotherapist' when the *patient reasonably believes* he is [a] person authorized to diagnose and treat mental or emotional conditions." (Emphasis in original.) We disagree.

Rule 503(a)(3), N.D.R.Ev., defines psychotherapists:

"(3) A 'psychotherapist' is (i) a person authorized to practice medicine in any state or nation, or reasonably believed by the patient so to be, while engaged in the diagnosis or treatment of a mental or emotional condition, including alcohol or drug addiction, or, (ii) a person licensed or certified as a psychologist under the laws of any state or nation, while similarly engaged."

Rule 503(a)(3) classifies three kinds of persons as psychotherapists: (1) a person authorized to practice medicine while engaged in the diagnosis or treatment of a mental or emotional condition; (2) a person reasonably believed by the patient to be authorized to practice medicine while engaged in the diagnosis or treatment of a mental or emotional condition; and (3) a person licensed or certified as a psychologist while engaged in the diagnosis or treatment of a mental or emotional condition. Because White is neither a physician nor a psychologist, he is not included within the first or third classifications. Copeland has not asserted that he believed that White was authorized to practice medicine while engaged in the diagnosis or treatment of a mental or emotional condition. White, therefore, is not included within the second classification. Under the specific language of the rule, it is not sufficient that Copeland believed that White was a "person authorized to diagnose and treat mental or emotional conditions." We conclude that White is not a psychotherapist whose testimony Copeland could exclude under Rule 503.

## II.

■ Copeland argues that his conviction of corruption of a minor requires proof of three elements: (1) that he had sexual intercourse with his daughter; (2) that the daughter was 15 years of age or older at the time; and (3) that sexual intercourse occurred in Richland County. Copeland concedes that the first two elements were

shown, but contends that the State did not prove the third element.

We employ a limited review in appeals challenging the sufficiency of the evidence to sustain a conviction. "In such cases we do not weigh conflicting evidence, nor do we judge the credibility of witnesses; instead, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction." *State v. Manke*, 328 N.W.2d 799, 805 (N.D. 1982). The same standard applies in both jury and nonjury trials. *State v. Moore*, 341 N.W.2d 373 (N.D.1983).

Copeland and his daughter lived on a farm at Lidgerwood in Richland County. Copeland's daughter testified that she had sexual intercourse with Copeland "more than once." As to whether or not acts of sexual intercourse occurred in Richland County, Copeland's daughter testified on direct examination:

"Q Where would these acts occur of intercourse?

"A I don't know. Sometimes in the semi.

\* \* \* \* \* \*

"Q Have they ever occurred at your farm in Lidgerwood?

"A Maybe once."

On redirect examination, Copeland's daughter testified:

"Q ..., did you not say that you recall one instance happening at the farm?

"A Yes.

"Q So everything you just testified to didn't happen in Minnesota?

"A Well, probably once at the farm...."

The following colloquy occurred between the trial judge and Copeland's daughter:

"THE COURT: I have just one question or a couple questions. You say that the last time that you had sexual intercourse with your father was last year

sometime between November and December; is that correct?

"THE WITNESS: Yes.

"THE COURT: Where did that occur?

"THE WITNESS: I think at the house.

"THE COURT: In Lidgerwood?

"THE WITNESS: Yes."

Viewing the foregoing testimony[5] in the light most favorable to the verdict or finding of guilt, we conclude that there is "substantial evidence to warrant a conviction." *State v. Manke, supra*, 328 N.W.2d at 805.

### III.

 Relying on § 12.1–20–16, N.D.C.C., and Rule 615, N.D.R.Ev., Copeland contends that he was deprived of a fair trial because the victim's guardian ad litem was allowed to testify and to remain in the courtroom before testifying.

At the beginning of the trial, Copeland's counsel requested that witnesses be excluded from the courtroom before testifying. The court ordered that witnesses be excluded from the courtroom. While the victim was testifying, Copeland's attorney informed the trial court that Bonnie Rasmusson, the victim's guardian ad litem, was present, that she was on the State's list of proposed witnesses, and that she believed, as the child's guardian ad litem, she should be present while the child testified. The trial court ruled that he would "permit the guardian ad litem to be present, even though she may be called as a witness."

Rule 615, N.D.R.Ev., provides that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." The Explanatory Note to Rule 615 makes it clear that "it is mandatory for a court to exclude witnesses when so requested by a party." *See also State v. Heart*, 334 N.W.2d 479 (N.D.1983).

Section 12.1–20–16, N.D.C.C., provides in part:

**5.** While the testimony of Copeland's daughter, who the trial court characterized as an uncooperative witness and who in a posttrial affidavit acknowledged that she "was required or forced to testify in the trial," is sufficient in itself to warrant Copeland's conviction, we note that Paul White testified that Copeland told him that sexual intercourse with his daughter "would occasionally happen at home" in Richland County.

"A minor who is a material or prosecuting witness in a criminal proceeding involving an act in violation of sections 12.1–20–01 through 12.1–20–08, or section 12.1–20–11 may, at the discretion of the court, have the witness' interests represented by a guardian ad litem at all stages of the proceedings arising from the violation.... A person who is also a material witness or prosecuting witness in the same proceeding may not be designated guardian ad litem...."

Rasmusson was appointed guardian ad litem for Copeland's children in Copeland's divorce proceeding before criminal charges were brought against Copeland. Rasmusson was, therefore, not designated as the victim's guardian ad litem in violation of § 12.1–20–16's proscription of designating material or prosecuting witnesses as guardians ad litem in criminal proceedings arising out of violations of §§ 12.1–20–01 through 12.1–20–08, or § 12.1–20–11, N.D. C.C.

While Copeland has asserted that "[a]llowing Bonnie Rasmusson to testify and remain in the courtroom deprived Mr. Copeland of a fair Trial," he has not articulated any way in which he might have been prejudiced and we discern none. Rasmusson provided no substantial evidence not provided by others. The State was required to prove that Copeland: (1) had sexual intercourse with his minor daughter; (2) when the daughter was 15 years of age or older; (3) in Richland County. Copeland conceded that the first two elements were proved through the testimony of his daughter. Rasmusson did not testify as to where the acts of sexual intercourse occurred. On the contrary, Rasmusson testified that she and Copeland did not discuss where the acts occurred and that Copeland never told her where they occurred. In our view, the error, if any, was harmless.

## IV.

 Copeland asserts that the trial court abused its discretion in denying Copeland's motion for a new trial on the ground of newly discovered evidence consisting of the victim's "clarification of her trial testimony." Copeland supported his motion with an affidavit of Copeland's daughter, stating in part:

"9. Despite what Paul White has testified to and the way my testimony has been construed, I had no sexual intercourse with John Lee Copeland and in fact no sexual contact with John Lee Copeland in the State of North Dakota after I was 15 years of age.

"10. The sexual contact or sexual intercourse with John Lee Copeland after I was 15 years of age took [sic] at places where I went with my dad on his truck-driving job. I would ride along with him. None of these stops were in the State of North Dakota. Most were in the State of Minnesota or the State of Iowa. Again, I want to make it abundantly clear that I had no sexual intercourse with my father and no sexual contact with him in North Dakota in the last three years or since I was 15 years of age."

The State supported its opposition to the motion with an affidavit of Chief Deputy Sheriff Larry Leshovsky stating, in part, that in an interview on March 18, 1988:

"Your Affiant asked [Copeland's daughter] if she could recall the last time John Copeland had sexual intercourse with her at their farm by Lidgerwood, North Dakota. [She] was very clear that John Copeland had sexual intercourse with her 2 or 3 weeks before she moved out of the farm house located near Lidgerwood, North Dakota. [She] gave the date leaving the farm as 02–16–88. [She] explained in detail that John Copeland had inserted the contraceptive Encare into her vagina and then inserted his penis into her vagina. [She] stated that she felt John Copeland ejaculate into her vagina. [She] stated that this happened in John Copeland's bedroom at the farm located near Lidgerwood, North Dakota." [6]

---

6. Copeland's daughter was more than 15 years of age at the time that Copeland allegedly last had sexual intercourse with her at the farm near Lidgerwood.

Newly discovered evidence must be considered in light of the entire record and a trial court's decision on a motion for a new trial on the ground of newly discovered evidence will not be set aside unless denial of the motion was an abuse of discretion. *State v. Hegland*, 355 N.W.2d 803 (N.D. 1984). Whether we deem the victim's affidavit as a recantation [7] or a clarification of her trial testimony, when viewed in light of the entire record, including the fact that the victim was an uncooperative witness who, in her own words, "was required or forced to testify in the trial," we are not persuaded that the trial court abused its discretion in denying the motion for a new trial on the ground of newly discovered evidence.

Affirmed.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

---

**7.** We have observed that "[c]ourts look upon recantation with suspicion and disfavor" and that "[r]ecanting testimony is scrutinized with extreme care." *State v. Hegland, supra,* 355 N.W.2d at 806.