1997 ND 199

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Daniel J. CLARK, Defendant and Appellant.**

**Criminal Nos. 960344, 970109, and 970231.**

Supreme Court of North Dakota.

Oct. 21, 1997.

Rehearing Denied Dec. 2, 1997.

 

Owen K. Mehrer, Stark County State's Attorney, Dickinson, for plaintiff and appellee.

Irvin B. Nodland (argued), and Chad C. Nodland, Bismarck, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Daniel J. Clark appealed from a jury verdict finding him guilty of manslaughter, from the judgment of conviction, and from orders denying his motions for a new trial. We affirm.

[¶ 2] Early on January 17, 1996, Daniel Clark shot George Girodengo twice, after finding him in Clark's wife's bedroom. Girodengo died in surgery. Clark was charged with murder. On May 17, 1996, a jury returned a verdict finding Clark not guilty of murder, but guilty of manslaughter.

[¶ 3] A judgment of conviction was entered on June 25, 1996. On June 28, 1996, Clark moved for an extension of time for filing a notice of appeal or motion for a new trial.

The trial court granted an extension. The trial court denied Clark's subsequent motions for a new trial and Clark filed notices of appeal dated October 28, 1996, and March 27, 1997.

## I

[¶ 4] The State moved to dismiss Clark's appeal as untimely under Rule 4(b), N.D.R.App.P.,[1] and Rule 33, N.D.R.Crim.P.:[2]

"The State moves to Dismiss Defendant's appeal. The Court lacks jurisdiction. The Defendant did not file a timely notice of appeal as required by Rule 4(b) NDRApp[P]. The Defendant failed to file a timely motion for a new trial, which would extend the 10–day limitation of Rule 4(b).

"The Trial Court had no power to extend the jurisdictional time limits of Rule 33, NDRCrimP., as it pertained to Defendant's subsequent motions for a new trial. The Trial Court's extension of Rule 33 time, without jurisdiction, failed to toll time limits of Rule 4(b), N.D.R.App.P.

"Any appeal considered by the court must be limited to the single issue raised by Defendant in his March 27, 1997, appeal from the trial court's denial of Defendant's Motion for New Trial based on newly discovered evidence."

[¶ 5] Rule 3, N.D.R.App.P., provides, in part:

1. Rule 4(b)(1), N.D.R.App.P., provides:
 "(1) In a criminal case the notice of appeal by a defendant must be filed with the clerk of the trial court within 10 days after the entry of the judgment or order appealed from. If a timely motion in arrest of judgment or for a new trial on any ground other than newly discovered evidence has been made, an appeal from a judgment of conviction may be taken within 10 days after the entry of an order denying the motion. A motion for a new trial based on the ground of newly discovered evidence will similarly extend the time for appeal from a judgment of conviction if the motion is made before or within 10 days after entry of the judgment."

2. Rule 33, N.D.R.Crim.P., provides, in part:
 "(b) *Motion Based on Newly Discovered Evidence or Jury Misconduct.* A motion based upon newly discovered evidence or jury mis-

conduct shall be supported by affidavits. A motion for a new trial based on the ground of newly discovered evidence must be made within 30 days after discovery of the facts upon which it is made and within 2 years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case.
 "(c) *Motion Based on Other Ground.* A motion for new trial on any other grounds shall be made on the file, exhibits, and minutes of the court.... The motion shall be made within 7 days after verdict or finding of guilt or within such further time as the court may fix during the 7–day period."
 Rule 45(b), N.D.R.Crim.P., provides that the "court may not extend the time for taking any action under Rules 29, 33, 34, 35, and 37, except to the extent and under the conditions stated in them."

*"(a) Filing the Notice of Appeal.* An appeal permitted by law as of right from a trial court to the supreme court shall be taken by filing a notice of appeal with the clerk of the trial court within the time allowed by Rule 4 . . . .

\*　　\*　　\*　　\*　　\*　　\*

■■■ *"(c) Content of the Notice of Appeal.* The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order, or part thereof appealed from; and shall name the court to which the appeal is taken."

Rule 3, N.D.R.App.P., is derived from Rule 3, F.R.App.P. "[I]t is contemplated that the federal practice and authority will apply to those rules which have substantially the same form as their federal counterpart." Explanatory Note, Rule 1, N.D.R.App.P. Courts construe Rule 3, F.R.App.P., liberally in favor of appellants. *Smith v. Barry,* 502 U.S. 244, 248, 112 S.Ct. 678, 681, 116 L.Ed.2d 678 (1992); 20 *Moore's Fed. Prac.* § 303.21[1] (3rd ed.1997). "While a notice of appeal must specifically indicate the litigant's intent to seek appellate review, . . . the notice afforded by a document, not the litigant's motivation in filing it, determines the document's sufficiency as a notice of appeal." *Smith v. Barry,* 502 U.S. at 248, 112 S.Ct. at 682. A number of types of documents have been determined sufficient as a notice of appeal, including a letter, a brief, a motion, and a memorandum stating an intent to appeal. 20 *Moore's Fed. Prac.* § 303.21[2] (3rd ed.1997). "[W]hile we have not directly stated that *notices* of appeal are to be liberally construed in favor of their sufficiency, many other courts have" and we have "allowed appeals under similar reasoning." *Biesterfeld v. Asbestos Corp. of America,* 467 N.W.2d 730, 735 (N.D.1991). Clark "did not mislead or prejudice" the State, and his "intention to seek review . . . was manifest." *Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962). *Cf., City of Minot v. Lundt,* 268 N.W.2d 482, 485 (N.D. 1978) ("There is nothing in the record showing that Lundt communicated to the district court within the time requirements set forth in Rule 4(b), N.D.R.App.P., his intention to

appeal from the petit larceny conviction."). Although there was considerable initial confusion as to its purpose, we conclude Clark's motion of June 28, 1996, sufficed as a notice of appeal so that it vested this court with jurisdiction. The State has conceded this court has jurisdiction to decide Clark's March 27, 1997, appeal from the trial court's denial of his motion for a new trial based on newly discovered evidence.

II

[¶ 6] Relying on a post-trial letter from a juror and his subsequent affidavit, Clark contends the trial court erred in refusing to grant a new trial based on jury misconduct. Clark avers:

"After trial, juror Gaylon Allen addressed a letter to the Court. App p 115. Allen's letter to the Court and his subsequent affidavit show these jurors never agreed Clark was guilty of manslaughter. They bartered their votes to get a verdict.

"Those who wanted AA murder bartered their true beliefs in order to assure conviction for something and to avoid two or three days of deliberation. Those who believed Clark was innocent agreed to manslaughter because: (1) they thought the sentence would only be three or four years; (2) they feared if Dan were retried, another jury might convict him of murder and he would have to spend his life in prison; and (3) they felt it was what Dan would want them to do."

■■■ [¶ 7] We do not reverse a trial court's denial of a motion for a new trial unless the trial court abused its discretion in denying the motion. *State v. Brooks,* 520 N.W.2d 796, 798 (N.D.1994). Rule 606(b), N.D.R.Ev., prohibits a juror from testifying as to the mental processes inherent in arriving at a verdict, but allows jurors to testify as to whether outside influences were brought to bear upon a juror, or if the verdict was arrived at by chance. Explanatory Note, Rule 606, N.D.R.Ev. "The purpose of Rule 606(b) is to free deliberation in the jury room by protecting from disclosure the manner in which a verdict was reached, and to promote the finality of the verdict." *Brooks,* 520 N.W.2d at 799.

[¶ 8] Under Rule 606(b), N.D.R.Ev., juror affidavits "may be used to show juror misconduct based upon extraneous prejudicial information, outside influence, or a chance verdict," but may not be used to show "the effect of the misconduct on the jury." *Keyes v. Amundson*, 343 N.W.2d 78, 84–5 (N.D.1983). "Our decisions have consistently rejected jurors' affidavits about the effect of internal deliberations." *Miller v. Breidenbach*, 520 N.W.2d 869, 872 (N.D.1994). *See also Kerzmann v. Rohweder*, 321 N.W.2d 84 (N.D.1982); *Grenz v. Werre*, 129 N.W.2d 681 (N.D.1964). "It is improper for a court to consider juror affidavits for purposes of impeaching a verdict relative to the mental processes or reasoning of the jurors in arriving at a decision." *Mauch v. Manufacturers Sales & Serv., Inc.*, 345 N.W.2d 338, 343 (N.D.1984). "An attempt to use juror affidavits to demonstrate how the jury arrived at its decision falls precisely within the confines of the rule prohibiting impeachment of the jury verdict." *Andrews v. O'Hearn*, 387 N.W.2d 716, 719 (N.D.1986).

[¶ 9] The juror affidavit relied upon by Clark states that juror's view of "the mental processes or reasoning of the jurors in arriving at a decision," *Mauch*, 345 N.W.2d at 343, and "falls precisely within the confines of the rule prohibiting impeachment of the jury verdict," *Andrews*, 387 N.W.2d at 719. We conclude the trial court did not abuse its discretion in denying Clark's motion for a new trial on the ground of jury misconduct.[3]

### III

[¶ 10] Clark contends the trial court erred in instructing the jury on the lesser offense of manslaughter. Clark argues: "This was an intentional shooting. . . . Unless Clark had some right to intentionally pull the trigger, he was guilty of murder. . . . He was either excused by reason of self defense or he was not. . . . The evidence did not support giving an instruction of manslaughter."

[¶ 11] The fact a shooting was intentional does not preclude a verdict of manslaughter if the shooting resulted from an unreasonable belief in the necessity of using force:

> " 'If, therefore, a person has an actual and reasonable belief that force is necessary to protect himself against danger of imminent unlawful harm, his conduct is justified or excused. If, on the other hand, a person's actual belief in the necessity of using force to prevent imminent unlawful harm is unreasonable, his conduct will not be justified or excused. Instead, he will be guilty of an offense for which negligence or recklessness suffices to establish culpability. For example, if a person recklessly believes that the use of force upon another person is necessary to protect himself against unlawful imminent serious bodily injury *and* the force he uses causes the death of the other person, he is guilty of manslaughter.' "

*State v. Gagnon*, 1997 ND 153, ¶ 6, 567 N.W.2d 807, quoting *State v. Leidholm*, 334 N.W.2d 811, 816 (N.D.1983). There was evidence of recklessness, and we conclude the trial court did not err in instructing the jury on the offense of manslaughter.

### IV

[¶ 12] Clark contends his right of confidential communication with his attorney was violated. A correctional officer monitored a telephone conversation between Clark and his wife, Peggy, in February 1996. The officer reported that when that conversation ended, "Dan made another phone call. It was to Erv Nodland. He asked Erv if Peggy could be subpoenaed to court. Erv said it was possible. Dan also made the remark that Peggy was out of state. It was a brief phone call."

[¶ 13] Clark moved for sanctions, including dismissal, suppression of any evidence obtained, and attorney fees. Upon learning of the monitoring, the trial court ordered:

> "Such arrangements shall be made by Norbert Sickler, Administrator of the Southwest Multi–County Correction Cen-

---

**3.** Although the trial court lacked authority to extend the time for Clark to file a motion for a new trial on the ground of jury misconduct, we briefly considered this matter to make it clear the juror affidavit involved could not properly have been relied upon to grant a motion for a new trial.

ter, and James Rice, Stark County Sheriff, to assure future, absolute confidentiality of any and all communications—written, telephonic, or in person—between persons incarcerated in said facility and his or her attorney(s) including, but not limited to, communications between Daniel J. Clark and Irvin B. Nodland."

The trial court denied Clark's request for sanctions, finding, among other things:

"1. This appears to be a one time action taken by an inexperienced jailer and not to be part of a pattern of eavesdropping orchestrated by the prosecution or jail.

"2. There is no evidence that any defense strategy was overheard or discussed and the Court can discern no realistic likelihood of any advantage having been gained by the State."

 [¶ 14] "[T]here is a legitimate public interest in protecting confidential communications between an attorney and his client made for the purpose of facilitating the rendition of professional legal services." *State v. Red Paint*, 311 N.W.2d 182, 185 (N.D. 1981). "There is a right to privacy inherent in the right to consult with counsel." *Bickler v. North Dakota State Highway Comm'r*, 423 N.W.2d 146, 147 (N.D.1988). "The essence of the Sixth Amendment right to effective assistance of counsel is, indeed, privacy of communication with counsel." *United States v. Brugman*, 655 F.2d 540, 546 (4th Cir.1981). "[T]he police must guarantee an accused has a reasonable opportunity to talk privately with counsel." *City of Mandan v. Jewett*, 517 N.W.2d 640, 642 (N.D.1994). However, "[p]ost-arrest actions that interfere with the right to counsel do not *per se* violate the Sixth Amendment. *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). Only where the actions produce, directly or indirectly, evidence offered against defendant at trial has there been a deprivation of the right to counsel." *United States v. Shapiro*, 669 F.2d 593, 598 (9th Cir.1982).

 [¶ 15] Clark has not drawn our attention to any evidence or prejudice flowing from the monitored conversation between Clark and his attorney. We conclude the trial court did not abuse its discretion in

denying Clark's request for sanctions. However, we denounce the monitoring of telephone conversations between incarcerated defendants and their attorneys. Should such activity be shown to be commonplace, so as to "evidence a deliberate institutional disregard," *State v. Runck*, 534 N.W.2d 829, 832 (N.D.1995), of an accused's right to privately communicate with counsel, "a judicial response to protect the integrity of our system," *id.*, may be required. *See also Madison v. North Dakota Dep't of Transp.*, 503 N.W.2d 243 (N.D.1993); *State v. Steffes*, 500 N.W.2d 608 (N.D.1993). No evidence this is a commonplace activity in this correction center is in this record. Rather, the record reflects prompt action by the trial judge to prevent such further incidents and prompt compliance by the center with the judge's order.

## V

 [¶ 16] Clark contends the trial court allowed into evidence hearsay evidence that violated the husband-wife privilege of Rule 504, N.D.R.Ev. On direct examination by the prosecuting attorney, Dickinson Police Officer Barb McLeod testified she was two blocks away when she was called to duty at the Clark residence; Clark came out of the house and said, "I shot him"; Peggy Clark was "[h]ysterical . . . very excited" when she came to the front door; Peggy Clark told her she went "to the kitchen to dial 911 . . . she heard two gunshots" and "Dan walked into the kitchen and told her, 'I told you I would do it and I did it.'"

[¶ 17] The trial court allowed the testimony under Rule 803, N.D.R.Ev., which provides, in part:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\*　　\*　　\*　　\*　　\*　　\*

"*(2) Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

The evidence supports the trial court's determination.

██ [¶ 18] The court also determined the evidence was not privileged under Rule 504, N.D.R.Ev., which provides:

"RULE 504. HUSBAND–WIFE PRIVILEGE

"*(a) Definition.* A communication is confidential if it is made privately by any person to his or her spouse and is not intended for disclosure to any other person.

"*(b) General Rule of Privilege.* An accused in a criminal proceeding has a privilege to prevent his spouse from testifying as to any confidential communication between the accused and the spouse.

"*(c) Who May Claim the Privilege.* The privilege may be claimed by the accused or by the spouse on behalf of the accused. The authority of the spouse to do so is presumed.

"*(d) Exceptions.* There is no privilege under this rule in a proceeding in which one spouse is charged with a crime against the person or property of (1) the other, (2) a child of either, (3) a person residing in the household of either, or (4) a third person, committed in the course of committing a crime against any of them."

██ [¶ 19] "[R]ules of privilege should be *narrowly* construed because they are by nature in derogation of the search for truth." *State v. Red Paint,* 311 N.W.2d 182, 185 (N.D.1981). A spouse seeking to assert the husband-wife privilege of Rule 504, N.D.R.Ev., "must have acted in reliance upon an expectancy of confidentiality that is reasonable under all the circumstances." *State v. McMorrow,* 314 N.W.2d 287, 289 (N.D. 1982). "Whether a particular communication is protected as a confidential communication is a question of fact to be determined by the trial court." *State v. Gaudet,* 638 So.2d 1216, 1222 (La.App.1994).

[¶ 20] The trial court ruled Clark's statement was not confidential because:

"(1) . . . a reasonable person would assume that statements made in the kitchen area could be overheard by Girodengo in the bedroom. Girodengo's condition and degree of consciousness could not have been known to the defendant at the time the alleged statements were made. (2) The defendant's wife was making a 911 call at least during part of the time the alleged statements were made. The fact that the defendant's wife was on the phone or that the phone may have been lying on the floor off the hook would lead a reasonable person to believe that any statements made might be overheard and were not being made in private. (3) The Court's view of the premises and its finding that the distance involved between the bedroom and kitchen was such that conversations could easily be overheard and there could.not be a reasonable expectation of privacy."

██ [¶ 21] Although there is evidence supporting the trial court's finding Clark's statement was not a confidential communication, we are persuaded the trial court was correct for another reason. Rule 504(b), N.D.R.Ev., specifically allows only the exclusion of testimony by an accused's spouse: "An accused in a criminal proceeding has a privilege to prevent his spouse from testifying as to any confidential communication between the accused and the spouse." Unlike other evidentiary privileges, the privilege afforded by Rule 504, N.D.R.Ev., does not extend beyond the person to whom the communication was made. Rule 504, N.D.R.Ev., does not give an accused the privilege to exclude the testimony of other witnesses about a confidential communication between the accused and his spouse. *Compare* Rule 502(b) ("A client [of a lawyer] has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services."); Rule 503(b)("A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment . . . among himself, his physician or psychotherapist."); Rule 505(b) ("A person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a clergyman in his professional character as spiritual adviser."); and Rule 507 ("A person

has a privilege, ..., to refuse to disclose and to prevent other persons from disclosing a trade secret owned by him.").

[¶ 22] Peggy Clark did not testify against Daniel Clark about a confidential communication between them. Officer McLeod testified about Peggy Clark's statement to her. Rule 504, N.D.R.Ev., does not preclude the admission of a spouse's statements to another about an allegedly confidential communication. *See, e.g., Trammel v. United States*, 445 U.S. 40, 52, 100 S.Ct. 906, 913 n. 12, 63 L.Ed.2d 186 (1980) ("It is only the spouse's testimony in the courtroom that is prohibited."); *People v. DeWitt*, 173 Mich.App. 261, 433 N.W.2d 325, 327 (1988) ("In this case, the marital privilege is inapplicable because defendant's wife did not testify. Her statements were introduced through a third party."); *Franco v. State*, 109 Nev. 1229, 866 P.2d 247, 257 (1993) ("The introduction of a spouse's hearsay statements is not 'testimony' or 'examination,' however, and is not reached by the spousal privilege statutes.").

[¶ 23] We conclude the trial court did not abuse its discretion in admitting into evidence Officer McLeod's testimony Peggy Clark told her that Dan Clark said to Peggy, " 'I told you I would do it and I did it.' "

## VI

[¶ 24] Clark contends the trial court erred in refusing to allow evidence of Girodengo's propensity for turbulence, violence and aggressiveness. Clark also contends the trial court erred in denying his motion for a new trial based on newly discovered evidence of violence.

[¶ 25] Rule 404(a)(2), N.D.R.Ev., allows "a defendant charged with assault or homicide, who has raised the issue of self defense, to introduce evidence of the victim's violent or aggressive character." *State v. McIntyre*, 488 N.W.2d 612, 615 (N.D.1992). Such evidence is admissible as circumstantial evidence that the victim was the aggressor and the defendant acted only in self defense. *Id.* at 616.

[¶ 26] We recently discussed a trial court's admission or exclusion of evidence:

" 'Absent an abuse of discretion, a trial court's determination on the relevance of evidence will not be reversed on appeal.' *Ingalls v. Paul Revere Life Ins. Group*, 1997 ND 43, ¶ 23, 561 N.W.2d 273. 'We will not overturn a trial court's admission or exclusion of evidence unless the trial court abused its discretion.' *Id.* at ¶ 20 [561 N.W.2d 273]. 'A trial court abuses its discretion when it acts in an arbitrary or capricious manner, or misapplies or misinterprets the law.' *State v. Christensen*, 1997 N.D. 57, ¶ 5, 561 N.W.2d 631."

*Ehrman v. Feist*, 1997 ND 180, ¶ 21, 568 N.W.2d 747. The trial court ruled Clark could introduce evidence of specific instances to show Girodengo's propensity for violence or aggressiveness, but could not introduce evidence of Girodengo's drug use and trafficking. A woman who lived with Girodengo for five years testified Girodengo once beat her and she reported it to the police, Girodengo displayed violent behavior in bars, and he engaged in fist fights. As to excluding evidence of drug use and trafficking as additional evidence of a propensity for violence, drug use and trafficking do not necessarily go hand in hand with violence or a propensity for violence. *See, e.g., State v. Herrick*, 1997 ND 155, ¶¶ 21–22, 567 N.W.2d 336. We conclude the trial court did not abuse its discretion by excluding evidence of Girodengo's drug use and trafficking.

[¶ 27] Clark contends the trial court erred in denying his motion for a new trial based on newly discovered evidence of Girodengo's violent past. "To prevail on a motion for a new trial on the ground of newly discovered evidence, the defendant must show ... (4) the weight and quality of the newly discovered evidence would likely result in an acquittal." *State v. VanNatta*, 506 N.W.2d 63, 70 (N.D.1993). Clark presented an affidavit by an inmate at the State Penitentiary, stating in part, that at a party in 1994, he "had seen [Girodengo] provide quantities of what I believe to be cocaine to this young woman.... [N]umerous individuals stood in line and took turns having sexual intercourse with her.... It appeared to me to be like a

gang rape. It was videotaped." The person alleged to have videotaped the incident denied any knowledge of it. The trial court denied the motion for a new trial, finding "the source of the evidence appears lacking in credibility and appears to be very susceptible to impeachment ... the newly discovered evidence is cumulative ... [and] simply in its entirety does not persuade the Court that it would be a decisive factor in producing a different verdict." We conclude the trial court did not abuse its discretion in denying the motion for a new trial on the ground of newly discovered evidence.

## VII

[¶ 28] Clark contends the trial court erred in admitting into evidence confidential communications between Dan Clark, Peggy Clark, and Karen Mueller, a social worker providing individual and marital counseling to Dan Clark and Peggy Clark.

[¶ 29] Clark relies on *Jaffee v. Redmond*, 518 U.S. ——, ——, 116 S.Ct. 1923, 1931, 135 L.Ed.2d 337, 348 (1996), where the United States Supreme Court adopted a psychotherapist privilege under Rule 501, F.R.Ev.,[4] and held that, in addition to covering communications between patients and their psychiatrists or psychologists, "the federal privilege should also extend to confidential communications made to licensed social workers in the course of psychotherapy." This court, on the other hand, already has a psychotherapist privilege rule, Rule 503, N.D.R.Ev., which we have construed as not covering communications to a social worker.

[¶ 30] Rule 503, N.D.R.Ev., states, in part:

*"(a) Definitions.* As used in this rule:

"(1) A 'patient' is a person who consults or is examined or interviewed by a physician or psychotherapist.

"(2) A 'physician' is a person authorized to practice medicine in any state or nation, or reasonably believed by the patient so to be.

"(3) A 'psychotherapist' is (i) a person authorized to practice medicine in any state or nation, or reasonably believed by the patient so to be, while engaged in the diagnosis or treatment of a mental or emotional condition, including alcohol or drug addition, or, (ii) a person licensed or certified as a psychologist under the laws of any state or nation, while similarly engaged.

\* \* \* \* \* \*

*"(b) General Rule of Privilege.* A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental, or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family."

In *State v. Copeland,* 448 N.W.2d 611, 616 (N.D.1989), this court held that a social worker, who was not a psychologist and was not authorized to practice medicine or believed by the defendant to be authorized to practice medicine, was "not a psychotherapist whose testimony Copeland could exclude under Rule 503."

[¶ 31] Clark supported his motion to preclude testimony by Mueller with affidavits by himself and Peggy Clark. The trial court discussed those affidavits in ruling on the motion:

"The defendant and his wife, Peggy Clark, have both submitted affidavits in support of defendant's motion. Peggy Clark asserts that she 'had reason to believe that she [Karen Mueller] was in the practice of diagnosing or treating mental or emotional conditions at the time that affiant saw her.' The defendant asserts in his affidavit that he 'believed that she [Karen Mueller] had the professional right to diagnose and treat emotional, mental,

4. Rule 501, F.R.Ev., provides in part:
 "Except as otherwise required ..., the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

and drug problems in a medical context.'
Neither the defendant nor his wife assert
that they reasonably believed that Karen
Mueller *was authorized to practice medicine* while engaged in diagnosis or treatment of mental or emotional conditions."

[¶ 32] Mueller is not a physician or a psychologist. Mueller was not "reasonably believed" by Peggy or Dan Clark to be "a person authorized to practice medicine." Clarks' affidavits stating beliefs that Mueller "was in the practice of diagnosing or treating mental or emotional conditions" or "had the professional right to diagnose and treat emotional, mental, and drug problems in a medical context," are insufficient to establish a psychotherapist-patient relationship. We conclude Mueller is not a psychotherapist whose testimony Clark could exclude under Rule 503, N.D.R.Ev.

### VIII

[¶ 33] The verdict, judgment of conviction, and orders denying a new trial are affirmed.

[¶ 34] MESCHKE, MARING, NEUMANN and SANDSTROM, JJ., concur.

