1998 ND 153

**OHIO CASUALTY INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**Daniel CLARK, insured, and Kelly Girodengo, a minor child, sole surviving child of George Girodengo, Deceased, by and through her Grandmother, and next Friend, Maria Entzel; and Maria Entzel, surviving Mother of George Girodengo, Deceased, Defendants and Appellants.**

**Civil No. 980057.**

Supreme Court of North Dakota.

Aug. 18, 1998.

Rehearing Denied Sept. 15, 1998.

---

Randall J. Bakke (argued), of Smith Bakke Hovland & Oppegard, Bismarck, for plaintiff and appellee. Appearance by Scott K. Porsborg.

Glen R. Bruhschwein (argued), of Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, for defendants and appellants Kelly Girodengo and Maria Entzel, and Irvin Nodland (appearance), of Irvin B. Nodland, P.C., Bismarck, for defendant and appellant Daniel Clark.

SANDSTROM, Justice.

[¶ 1] Daniel Clark, Kelly Girodengo, and Maria Entzel have appealed a judgment declaring Ohio Casualty Insurance Company has no duty to defend or indemnify Daniel Clark in a pending lawsuit for the wrongful death of George Girodengo. We conclude there are no genuine issues of material fact about Daniel Clark's intent in shooting George Girodengo. Daniel Clark's killing of

George Girodengo was an intentional act for which insurance coverage was excluded, and the issue of self defense is res judicata. We affirm.

I

[¶ 2] "Early on January 17, 1996, Daniel Clark shot George Girodengo twice, after finding him in Clark's wife's bedroom. Girodengo died in surgery. Clark was charged with murder. On May 17, 1996, a jury returned a verdict finding Clark not guilty of murder, but guilty of manslaughter." *State v. Clark*, 1997 ND 199, ¶ 2, 570 N.W.2d 195. On appeal from his criminal conviction, Clark contended the trial court erred in instructing the jury on the lesser offense of manslaughter, arguing " '[t]his was an intentional shooting.... Unless Clark had some right to intentionally pull the trigger, he was guilty of murder.... He was either excused by reason of self defense or he was not.... The evidence did not support giving an instruction of manslaughter.' " *Id.* at ¶ 10. In affirming the conviction, we said, "[t]he fact a shooting was intentional does not preclude a verdict of manslaughter if the shooting resulted from an unreasonable belief in the necessity of using force" and concluded "the trial court did not err in instructing the jury on the offense of manslaughter." *Id.* at ¶ 11.

[¶ 3] Maria Entzel, George Girodengo's mother, and Kelly Girodengo, his daughter, sued Daniel Clark and his wife, Peggy Clark. Against Daniel Clark, the complaint alleged: "[O]n or about January 17, 1996, Daniel Clark carelessly and negligently discharged a firearm," resulting in George Girodengo's death. Against Peggy Clark, the complaint alleged: "On or about January 16 and 17, 1996, Peggy Clark invited George Girodengo into the Clark residence" and "Peggy Clark negligently misrepresented to George Girodengo the safety of his presence at the Clark residence."

[¶ 4] While providing a defense, Ohio Casualty Insurance Company, which had issued a homeowner's insurance policy to Daniel Clark, brought an action against Daniel Clark, Kelly Girodengo, and Maria Entzel for "[a] declaratory judgment stating that the acts of Daniel Clark are excluded from coverage under the Ohio Casualty policy, and therefore that Ohio Casualty owes no duty to defend or indemnify Daniel in connection with the Girodengo lawsuit." The policy contains the following coverage provision:

COVERAGE E—Personal Liability

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.

The policy contains the following exclusion:

1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

   a. which is expected or intended by the insured; ...

The trial court granted Ohio Casualty's motion for summary judgment. Judgment was entered accordingly, and this appeal followed.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06, 32–23–02, and 32–23–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 2, and N.D.C.C. §§ 27–02–04 and 28–27–01.

II

[¶ 6] The trial court ruled "this policy, as well as public policy, unambiguously excludes coverage for acts 'expected or intended' by the insured." Daniel Clark, Kelly Girodengo, and Maria Entzel (hereinafter collectively referred to as the appellants) contend the allegations of the amended complaint would support a recovery under a risk covered by the policy and Ohio Casualty had a duty to defend. The appellants argue "[i]t is undisputed that the allegations of the Amended Complaint do not allege any intentional act;" the trial court erred "because of

its failure to distinguish between the duty to defend and the duty to indemnify;" the court's "analysis should not go beyond the face of the Amended Complaint and the language of the insurance policy;" and "[t]here should have been no inquiry by the trial court into the underlying facts; only the allegations of the Amended Complaint were needed for purposes of determining the duty to defend."

[¶ 7] In *Hins v. Heer*, 259 N.W.2d 38 (N.D.1977), Marlo Hins was injured by Robert Heer in an assault and battery. Hins sued Heer. Heer's insurer refused to defend, asserting the policy did not cover willful acts. A default judgment was entered against Heer. Hins argued the insurer had a duty to defend. This Court held "Hins has no standing to challenge Aid's [the insurer's] duty to defend pursuant to the provisions of Heer's homeowner's insurance policy." *Id.* at 39. *See also Medd v. Fonder*, 543 N.W.2d 483, 487 (N.D.1996) (an insurance policy relates to the parties executing it, is designed and intended for the benefit and protection of the insured, and is not intended to be of direct benefit to an injured claimant). Thus, in construing an insurance policy, we are concerned with the insured's rights under the policy, rather than a third party's interest in compensation.

[¶ 8] Under N.D.C.C. § 32–23–06, a trial court is required "to render a declaratory judgment to determine both coverage and duty to defend, whether or not the insured's liability has been determined." *Blackburn, Nickels & Smith, Inc. v. National Farmers Union Prop. & Cas. Co.*, 452 N.W.2d 319, 323 (N.D.1990). "Ordinarily, an insurer has a duty to defend an underlying action against its insured if the allegations in the complaint give rise to potential liability or a possibility of coverage under the insurance policy." *Nodak Mut. Ins. Co. v. Heim*, 1997 ND 36, ¶ 11, 559 N.W.2d 846. Courts, however, do not operate in a vacuum. *In re R.M.B.*, 402 N.W.2d 912, 917 (N.D.1987); *In re Estates of Kjorvestad*, 304 N.W.2d 83, 86 (N.D.1981). An insurer "has no duty to provide a defense in an action that would yield no possibility of liability to its insured." *Hanneman v. Continental Western Ins. Co.*, 1998 ND 46, ¶ 45,

575 N.W.2d 445. Furthermore, labeling Daniel Clark's conduct as negligent "does not alter its true nature." *See Heim*, at ¶ 31. "[T]he duty to defend does not depend on the nomenclature of the claim. Rather, the focus is on the basis for the injury." *Heim*, at ¶ 31.

[¶ 9] The appellants argue "Ohio Casualty has agreed to defend this suit 'even if the suit is groundless, false or fraudulent.'" This Court has previously addressed a similar argument:

Kovash misconstrues the meaning of the clause. It does not oblige the plaintiffs to defend any groundless, false or fraudulent case against an insured; rather, it requires them to defend only those actions which come within the terms of the insurance policy, even if those actions are groundless, false or fraudulent. *See Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, 175 (1966). In this case Vannet's claim against Kovash is for intentional acts. Intentional acts are specifically excluded from coverage. Whether the claim for intentional acts is also groundless, false or fraudulent has no bearing on the duty to defend.

*National Farmers Union Prop. & Cas. Co. v. Kovash*, 452 N.W.2d 307, 312 (N.D.1990).

[¶ 10] We conclude the trial court did not err in looking beyond the face of the complaint to determine if Ohio Casualty had a duty to defend in the underlying action for George Girodengo's wrongful death.

### III

[¶ 11] The appellants contend the trial court should not have granted the insurer's motion for summary judgment because there are genuine issues of material fact on Daniel Clark's intent.

[¶ 12] The appellants argue: "It is clear that there exists a reasonable inference of negligence or recklessness based on the facts presented in this record." We said in *State v. Clark*, 1997 ND 199, ¶ 11, 570 N.W.2d 195: "There was evidence of recklessness, and we conclude the trial court did not err in instructing the jury on the offense of manslaughter." From that passage, the

appellants contend this Court has rejected intentional conduct as the sole conclusion that can be drawn from the evidence. The appellants' reliance on the quoted language is misplaced. Clark argued in the criminal appeal " '[t]his was an intentional shooting.' " *Id.* at ¶ 10. Thus, the intentional nature of the shooting was a given. At the hearing in the trial court, Clark again contended the shooting was intentional.

[¶ 13] The appellants argue there are genuine issues of fact about which shot killed George Girodengo and about whether both discharges of the gun were intentional. Clark argued below "he intentionally pulled the trigger. There is no question about that, none. And the second shot is irrelevant." The trial court ruled:

> On this issue, the Court finds that, whichever gunshot ultimately killed Girodengo, both shots were inextricably linked and part of the same series of events. Since it is undisputed by Clark that he intended to do Girodengo harm by firing a weapon at him at point blank range, it is irrelevant whether he can specifically remember pulling the trigger for the second shot.

We agree with the trial court's analysis. *See Nodak Mut. Ins. Co. v. Heim,* 1997 ND 36, ¶ 32, 559 N.W.2d 846 ("We conclude the alleged inadvertent or negligent acts by Maurus are a continuous pattern of conduct which are inextricably linked with his intentional molestation, and his intent to harm therefore may be inferred from his conduct.").

[¶ 14] We conclude the trial court correctly determined there was no genuine issue of material fact as to whether Daniel Clark intentionally fired the shots that killed George Girodengo.

## IV

[¶ 15] The appellants contend the insurance policy language does not exclude coverage of the actions of Daniel Clark.

[¶ 16] In its complaint for a declaratory judgment, Ohio Casualty originally relied upon an exclusion contained in the property loss portion of the policy. Ohio Casualty relied on the liability exclusion quoted earlier in this opinion in the hearing in the trial court, but did not amend the complaint. The appellants argue Ohio Casualty did not properly raise the intentional acts exclusion in the liability portion of the policy. However, the appellants also argue in their brief: "The significant issue of whether Ohio Casualty may change its reasons for denial was not ripe for decision at the trial level and is not ripe for decision in this appeal." Because we consider this to be a waiver of the issue, we do not address it.

[¶ 17] The policy excludes liability for bodily injury "which is expected or intended by the insured." This Court has held intentional-act exclusions exclude liability for intentional, willful, or criminal acts. *See, e.g., Nodak Mut. Ins. Co. v. Heim,* 1997 ND 36, 559 N.W.2d 846; *National Farmers Union Prop. & Cas. Co. v. Kovash,* 452 N.W.2d 307 (N.D.1990); *Hins v. Heer,* 259 N.W.2d 38 (N.D.1977); *Haser v. Maryland Cas. Co.,* 78 N.D. 893, 53 N.W.2d 508 (1952). "[W]here the insured put a gun to someone's head and pulled the trigger, the intention for the gun to discharge and injure the victim can be inferred." 7 Lee R. Russ, *Couch on Insurance* § 103:34 (3d ed.1997). "Intentional use of a firearm" has "been held to be intentional as a matter of law, and, therefore, outside of policy coverage." *Id.* Furthermore, as we said in *Heim,* at ¶ 21, N.D.C.C. §§ 9–08–02 [1] and 26.1–32–04 [2] "manifest a public policy precluding an insured from being indemnified for losses caused by the insured's intentional or willful conduct."

[¶ 18] We conclude Daniel Clark's unexcused shooting and killing of George Girodengo was an intentional act for which

---

1. Section 9–08–02, N.D.C.C., provides: "All contracts which have for their object, directly or indirectly, the exempting of anyone from responsibility for his own fraud or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

2. Section 26.1–32–04, N.D.C.C., provides: "An insurer is not liable for a loss caused by the willful act of the insured, but the insurer is not exonerated by the negligence of the insured or of the insured's agents or others."

coverage is excluded by his homeowner's insurance policy.

## V

[¶ 19] The appellants contend self defense is not excluded by the insurance policy. At the trial court hearing, Daniel Clark's attorney raised the issue:

MR. NODLAND: So we've come full circle to the real question, whether or not in every instance does the act of self-defense preclude coverage under an insurance policy that says, an intentional act of self-defense precludes coverage in an instance of where someone exercises self-defense.

The trial court did not decide if acts done in self-defense are excepted from an intentional acts exclusion. The trial court ruled it "need not speculate what our own Supreme Court would rule on this issue, because the jury in Daniel Clark's criminal case has already found that this shooting was not justifiable self defense."

[¶ 20] Some courts have held acts of self defense are not covered by insurance policies because the insured intends to injure, while other courts have held acts of self defense may bar application of an intentional acts exclusion. 7 Lee R. Russ, *Couch on Insurance* § 103:32 (3d ed.1997). However, like the trial court, we need not determine if liability for acts done in reasonable self defense are excluded from coverage by the intentional acts exclusion. Daniel Clark's conviction for killing George Girodengo renders relitigation of the question of whether Daniel Clark acted in self defense unnecessary.

[¶ 21] If there is evidence to support a self-defense claim, an accused is entitled to an instruction on it, and the State must prove beyond a reasonable doubt the accused did not act in self defense. *State v. Olander*, 1998 ND 50, ¶ 20, 575 N.W.2d 658. At his murder trial, Clark contended his conduct was excused because he acted in self defense. The jury convicted Clark of manslaughter. Thus, the jury found, beyond a reasonable doubt, Clark did not act in self defense. This Court affirmed the conviction in *State v.*

*Clark*, 1997 ND 199, 570 N.W.2d 195. Whether Clark acted in self defense need not be relitigated.

[¶ 22] In insurance coverage litigation, a criminal judgment may preclude relitigation of intent:

In some cases, the doctrine of collateral estoppel will be applied to prevent relitigation of the issue of intent with regard to coverage under an insurance policy where the insured has already been found to have acted with intent in a criminal trial. The rule applies even where the civil complaint alleges negligence, rather than intentional wrongdoing.

7 Russ, *Couch on Insurance, supra*, § 103:35. Generally, the modern rule gives res judicata effect to criminal convictions to prevent relitigation in later civil proceedings:

[T]he modern rule, as ·expressed in the Restatement 2d, Judgments, is to accord judgments in criminal proceedings collateral estoppel effect, i.e. to preclude relitigation of any issues necessarily and actually decided therein in later civil proceedings, similar to that of judgments in civil cases, at least with respect to judgments for the prosecuting authority. . . .

. . . .

Generally, the higher standard of proof and numerous safeguards in criminal proceedings are given as rationale for the rule allowing judgments in criminal proceedings to have a preclusive effect in subsequent civil actions.

47 Am.Jur.2d, *Judgments* § 732 (1995).

[¶ 23] Courts bar relitigation of claims and issues to promote the finality of judgments, which increases certainty, discourages multiple litigation, conserves judicial resources, and avoids wasteful expense and delay. *McCarty v. N.D. Workers Comp. Bureau*, 1998 ND 9, ¶ 12, 574 N.W.2d 556. The doctrines of collateral estoppel and res judicata promote efficiency "by requiring that disputes be finally resolved and ended." *K & K Implement, Inc. v. First Nat'l Bank*, 501 N.W.2d 734, 738 (N.D.1993). "Res judicata means that a valid, existing final judgment from a court of competent jurisdiction

is conclusive, with regard to the issues raised, or those that could have been raised, and determined therein, as to the parties and their privies in all other actions." *Peacock v. Sundre Township,* 372 N.W.2d 877, 878 (N.D.1985). "[R]es judicata applies even though the subsequent claims may be based upon a different legal theory." *Littlefield v. Union State Bank,* 500 N.W.2d 881, 884 (N.D.1993). *Hofsommer v. Hofsommer Excavating, Inc.,* 488 N.W.2d 380, 383 (N.D. 1992), explained preclusion by prior proceedings:

> Although collateral estoppel is a branch of the broader law of res judicata, the doctrines are not the same. Res judicata, or claim preclusion, is the more sweeping doctrine that prohibits the relitigation of claims or issues that were raised or could have been raised in a prior action between the same parties or their privies and which was resolved by final judgment in a court of competent jurisdiction. On the other hand, collateral estoppel, or issue preclusion, generally forecloses the relitigation, in a second action based on a different claim, of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit. (Citations omitted.)

*Hofsommer* also explained:

> For purposes of both res judicata and collateral estoppel in this state, only parties or their privies may take advantage of or be bound by the former judgment.
>
> . . . .
>
> In general, privity exists if a person is "so identified in interest with another that he represents the same legal right." 46 Am.Jur.2d *Judgments* § 532, at p. 683 (1969) [Footnote omitted.] ... Fundamental fairness underlies any determination of privity. *Bismarck Public School District No. 1 v. Hirsch,* 136 N.W.2d 449, 453–454 (N.D.1965).

*Hofsommer,* 488 N.W.2d at 384.

[¶ 24] In *State Farm Fire & Cas. Co. v. Reuter,* 299 Or. 155, 700 P.2d 236, 237 (1985), an insurer asserted "Gail Theresa Bullen (Bullen), the victim of a sexual assault by Richard Scott Reuter (Reuter), is collaterally estopped from claiming coverage under State Farm's liability insurance policy because of Reuter's conviction of the sexual assault in the earlier criminal action." The court held Reuter's conviction would bar his claim of coverage under his insurance policy, and Bullen, the victim, was similarly barred "[b]ecause of her legal relationship to Reuter—a relationship which arises from her status as a claimant and potential judgment creditor of Reuter." *State Farm,* 700 P.2d at 241. The court explained:

> The point is that, although her present status is that of a claimant, her future status, insofar as any claim against State Farm is concerned, would be as a judgment creditor of Reuter (if she prevails on her claim against Reuter). Within that status, she is subject to the claims or defenses that the insurer has against the one from whom she derives her claim.
>
> With the finding in the criminal case, Reuter became subject to the collateral estoppel claim that State Farm here asserts. Bullen's derivative status collaterally estops her.

*State Farm,* 700 P.2d at 243.

[¶ 25] In *Ideal Mut. Ins. Co. v. Winker,* 319 N.W.2d 289 (Iowa 1982), an insured who "had a full and fair opportunity to defend against the State's accusations in the criminal prosecution but chose to waive that opportunity by pleading guilty," *id.* at 296, and "undoubtedly had adequate incentive to litigate the issue of his guilt," *id.* at 296, was precluded in a later civil action "from denying his guilt of second-degree murder," *id.* at 297.

[¶ 26] In *New Jersey Mfrs. Ins. Co. v. Brower,* 391 A.2d 923, 161 N.J.Super. 293 (1978), William A. Brower shot and killed Charles Rosenstein and wounded William Geschke and Raymond White. Brower was convicted of second degree murder and assault with intent to kill. Brower's insurer sought a declaratory judgment there was no coverage on the ground Brower's homeowner's insurance policy excluded bodily injury caused intentionally by the insured. The court said: "The jury's verdict necessarily was predicated upon a finding that Gesch-

ke's injuries were intentionally inflicted by Brower." *Brower*, 391 A.2d at 924. The court said, "[a] criminal conviction can bar the person convicted and his privies as to an issue of fact necessarily determined by the conviction and material to a civil litigation to which he is a party." *Brower*, 391 A.2d at 926. The court held: "The doctrine of collateral estoppel is not rendered inapplicable by virtue of the fact that the parties in the civil action are not the same as those in the criminal proceeding." *Brower*, 391 A.2d at 926. The court explained why a victim of Brower's criminal act was precluded from relitigating whether his injury was intentionally caused, and, therefore, excluded from coverage:

> While Geschke also was not a party to those [criminal] proceedings, he was in privity with Brower. Therefore, he is barred from relitigating any issue necessarily decided against Brower in the earlier criminal action. Geschke's rights under the insurance policy are derivative from those of Brower. In effect, Geschke stands in the shoes of Brower with respect to the liability policy involved. (Citation omitted.) Moreover, there was an identity of interest between Geschke and Brower at the time of the criminal proceedings. Brower, who was charged with, among other crimes, assault with intent to kill, was afforded a full opportunity to litigate the issue of his guilt. He had every reason to make as vigorous and effective a defense as possible. His personal interests would have been served by establishing that he did not intend to assault Geschke because he would have avoided criminal responsibility for the assault and retained his liability coverage. Geschke had a similar interest in the outcome of the trial because coverage would not be precluded if Brower did not intentionally assault him.
>
> The conviction of Brower for assault with intent to kill stamps the assault upon Geschke as an intentional one. The jury could not have returned such a verdict without making a determination that the assault was intentional, not accidental as now claimed by Geschke. Thus, the finding of guilt conclusively established that Geschke's injuries were intentionally caused by Brower and collaterally estopped Geschke from relitigating that same issue with manufacturers.

*Brower*, 391 A.2d at 926–27.

[¶ 27] In *Poole v. State Farm Fire & Cas. Co.*, 941 F.Supp. 964 (D.Colo.1996), an insured was convicted of murder, and, when sued for wrongful death, sought a declaration his insurer was required to defend and indemnify him. The court held: "Simply put, determination beyond a reasonable doubt that one acted with deliberative intent necessarily negates questions of diminished mental capacity and legal insanity." 941 F.Supp. at 968. *See also Western Mut. Ins. Co. v. Yamamoto*, 29 Cal.App.4th 1474, 35 Cal. Rptr.2d 698 (1994) (a juvenile court's findings of intentional conduct have a collateral estoppel effect in a later civil action to determine coverage under an insurance policy excluding coverage for expected or intended bodily injury).

[¶ 28] Daniel Clark raised self defense as a defense in his criminal trial. He had a full and fair opportunity, and an adequate incentive, to litigate the issue of his guilt in the criminal trial. The jury found, beyond a reasonable doubt, he was not acting in self defense when he shot and killed George Girodengo. Daniel Clark and the other appellants had an identity of interest in establishing self defense in the criminal trial. The rights of Kelly Girodengo and Maria Entzel under Clark's insurance policy are derivative from his rights. We conclude the jury's determination Daniel Clark was not acting in self defense when he shot and killed George Girodengo is res judicata, and the appellants may not now relitigate that issue.[3]

## VI

[¶ 29] Under the rubric of "public policy," the appellants contend: (1) "Daniel Clark does not have adequate assets to answer if he is found liable for negligently or recklessly causing the death of Kelly Girodengo's fa-

---

**3.** Decisions like *Thornburg v. Perleberg*, 158 N.W.2d 188 (N.D.1968), and *Renner v. Murray*, 136 N.W.2d 794 (N.D.1965), holding a criminal conviction not based upon a plea of guilty is inadmissible in a later civil action arising out of the same set of facts, were written before this Court's more recent res judicata jurisprudence and are no longer controlling.

ther. The only opportunity for compensation comes from the benefits of his Ohio Casualty insurance policy;" (2) "There is a substantial factual issue which must be resolved in a proper fashion, i.e., did Daniel Clark expect and intend to kill George Girodengo?;" and (3) "The rule of law apparently established by the trial court in its order is that a homeowner with a liability policy gives up any right to protect and defend himself."

[¶ 30] While Daniel Clark may not have adequate assets to respond in damages if found liable, as we have already noted, the legislature has manifested a public policy against requiring insurers to cover damages caused by an insured's intentional acts. We have upheld the trial court's determination there was no genuine issue of material fact as to whether Daniel Clark intentionally fired the shots that killed George Girodengo. " 'Where an intentional act results in injuries which are the natural and probable consequences of the act, the injuries, as well as the act, are intentional.' " Hins v. Heer, 259 N.W.2d 38, 40 (N.D.1977), quoting Rankin v. Farmers Elevator Mut. Ins. Co., 393 F.2d 718, 720 (10th Cir.1968). "Our decision in Hins thus follows the 'classic tort doctrine' for determining an insured's intent for purposes of an exclusion for intentional acts." National Farmers Union Prop. & Cas. Co. v. Kovash, 452 N.W.2d 307, 311 (N.D.1990). Finally, we have left open the question of whether liability for acts done in reasonable self defense are excluded from coverage by an intentional acts exclusion in an insurance policy. Resolution of that question may be deferred until it is presented in a case in which an insured's claim of self defense has not been rejected by a jury in a prior criminal proceeding based upon the same underlying facts as the civil case in which the insured's insurance coverage is being litigated.

### VII

[¶ 31] The judgment is affirmed.

[¶ 32] VANDE WALLE, C.J., and MESCHKE, MARING and NEUMANN, JJ., concur.

