1998 ND 168

**OHIO CASUALTY INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**Robert HORNER, Sally Horner, and Brian Horner, Defendants and Appellants.**

Civil No. 980030.

Supreme Court of North Dakota.

Sept. 15, 1998.

Corey J. Quinton, of Smith Bakke Hovland & Oppegard, Moorhead, MN, for plaintiff and appellee.

Ralph F. Carter, of Moosbrugger, Dvorak & Carter, Grand Forks, for defendants and appellants.

MARING, Justice.

[¶ 1] Robert Horner, Sally Horner and Brian Horner appealed a summary judgment declaring Ohio Casualty Insurance Company (Ohio) has no duty to defend or indemnify the Horners in any action brought against them by Laurie Fay for damages incurred from being struck by a slingshot on April 14, 1995. We conclude there are no genuine issues of material fact Brian Horner's slingshot shooting of Fay was an intentional act for which insurance coverage is excluded. We therefore affirm.

I

[¶ 2] Ohio issued a homeowner's insurance policy to Robert and Sally Horner effective June 17, 1994 through June 17, 1995. The Horners' 16–year–old son, Brian Horner, was an insured under the policy, which provided coverage for personal liability and for medical payments to others. Under the section on personal liability coverage, the policy stated if a claim or suit is brought against an insured for bodily injury or property damage caused by an occurrence to which the policy coverage applies, Ohio would provide a defense and indemnification up to the policy limits. Under the medical payments to others section, the policy provided reasonable medical expenses would be paid to a person injured off the insured location by the activities of an insured. However, coverage for personal liability and medical payments to others was specifically excluded for "bodily injury or property damage ... which is expected or intended by the insured."

[¶ 3] On April 14, 1995, Brian Horner and his friend, Casey Olmstead, were driving

around Grand Forks in a pickup driven by Olmstead. A slingshot owned by Olmstead was inside the pickup. The boys were using the slingshot to shoot gophers near the hospital. After shooting gophers, they left to find a place to eat.

[¶ 4] As the boys neared the intersection of University Drive and Columbia Road, they saw a young lady, later identified as Laurie Fay, rollerblading in a northerly direction on Columbia Road. While Olmstead was driving the 35 mile-per-hour speed limit, Brian Horner picked up Olmstead's slingshot and shot a rock approximately the size of a quarter at Fay, striking her in the back of the neck. Olmstead and Brian Horner continued driving on University Drive and spotted another woman walking down the sidewalk. Brian Horner again shot a stone from the slingshot and struck the woman, later identified as Cheryl Hannum, in the shoulder.

[¶ 5] Olmstead and Brian Horner proceeded to a local restaurant where they ate, and then returned to Olmstead's residence. Grand Forks Police officers arrived and issued citations to both Olmstead and Brian Horner for disorderly conduct.

[¶ 6] Ohio received notice of Fay's claims against Brian Horner from Robert and Sally Horner and from American West Insurance Company (American), which tendered to Ohio defense of Fay's claims for medical expenses against American's insured, Olmstead. Ohio retained an insurance adjuster, Richard Dahl, to take a statement from Brian Horner concerning the incident. Dahl asked Brian Horner to tell him what happened on April 14, 1995:

> BH: Well, earlier that day we were, about a hour before that it happened we were shootin gophers over here by the hospital and then we just drove around a little bit and shot at the lady and then hit her.
>
> \*   \*   \*   \*   \*   \*
>
> RD: Did you, you were actually aiming at this person or were you just shooting someplace?
>
> BH: Well, I wasn't aiming trying to hit her but I just shot it and it hit I guess I hit her in the back of the ... I wasn't trying

to hit her in the head or anything. I was just shootin.

> RD: What were you shooting at?
>
> BH: A person.
>
> RD: You were shooting at ...
>
> BH: Yeah.
>
> RD: at her?
>
> BH: Yah.
>
> RD: So you were actually ah trying to hit her but not in the head?
>
> BH: Exactly.

[¶ 7] Ohio commenced this declaratory judgment action under N.D.C.C. ch. 32–23 to determine both its duty to defend the Horners and its duty to indemnify them for any claims or actions brought by Fay resulting from the April 14, 1995 incident. Fay and Brian Horner then entered into a *Miller v. Shugart* agreement on April 14, 1997. *See Sellie v. North Dakota Ins. Guar. Ass'n,* 494 N.W.2d 151 (N.D.1992) (recognizing validity of release used in *Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982)).

[¶ 8] Ohio moved for summary judgment, asserting there was no coverage under the policy because of the intentional acts exclusion. The Horners argued Brian Horner's act of shooting the slingshot was negligent rather than intentional. The trial court concluded, as a matter of law, Brian Horner's actions were intentional, thereby excluding coverage under the policy, and ruled Ohio had no duty to defend or indemnify the Horners against any action brought against them by Fay. The Horners appealed.

## II

[¶ 9] Summary judgment is a procedure for the prompt and expeditious disposition of a controversy without trial if either litigant is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving the factual disputes would not alter the results. *Perry Center, Inc. v. Heitkamp,* 1998 ND 78, ¶ 12, 576 N.W.2d 505. On appeal, we review the evidence in the light most favorable to the party opposing the summary judgment motion. *Freed v. Unruh,* 1998 ND 34, ¶ 6, 575 N.W.2d 433. Although we have ex-

pressed our reluctance to approve summary judgment when allegations of negligence are involved, summary judgment may be appropriate even in negligence cases. *See Rawlings v. Fruhwirth*, 455 N.W.2d 574, 576 (N.D.1990). Issues which are ordinarily factual in nature may become issues of law for a court to decide if reasonable persons could reach only one conclusion from the facts. *Diegel v. City of West Fargo*, 546 N.W.2d 367, 370 (N.D.1996).

A

■ [¶ 10] The Horners assert Ohio's duty to defend and indemnify cannot be determined as a matter of law in this case because Fay had not yet commenced an action against the Horners at the time Ohio brought this declaratory judgment action. Because this Court has often said an insurer must defend actions against an insured if the "allegations in the complaint" against the insured give rise to potential liability or a possibility of coverage under the language of the insurance policy, *National Farmers v. Kovash*, 452 N.W.2d 307, 309 (N.D.1990), the Horners argue it was impossible for the court to decide whether a potential for liability or a possibility of coverage existed because no third-party complaint was submitted to the court. We reject the Horners' argument.

[¶ 11] In *Ohio Casualty Insurance Company v. Clark*, 1998 ND 153, ¶ 10, 583 N.W.2d 377, we recently held a trial court did not err in looking beyond the face of a complaint to determine if an insurance company had a duty to defend a wrongful death action.

Under N.D.C.C. § 32–23–06, a trial court is required "to render a declaratory judgment to determine both coverage and duty to defend, whether or not the insured's liability has been determined." *Blackburn, Nickels & Smith, Inc. v. National Farmers Union Prop. & Cas. Co.*, 452 N.W.2d 319, 323 (N.D.1990). "Ordinarily, an insurer has a duty to defend an underlying action against its insured if the allegations in the complaint give rise to potential liability or a possibility of coverage under the insurance policy." *Nodak Mut. Ins. Co. v. Heim*, 1997 ND 36, ¶ 11, 559 N.W.2d 846. Courts, however, do not

operate in a vacuum. *In re R.M.B.*, 402 N.W.2d 912, 917 (N.D.1987); *In re Estates of Kjorvestad*, 304 N.W.2d 83, 86 (N.D. 1981). An insurer "has no duty to provide a defense in an action that would yield no possibility of liability to its insured." *Hanneman v. Continental Western Ins. Co.*, 1998 ND 46, ¶ 45, 575 N.W.2d 445. Furthermore, labeling Daniel Clark's conduct as negligent "does not alter its true nature." *See Heim*, at ¶ 31. "[T]he duty to defend does not depend on the nomenclature of the claim. Rather, the focus is on the basis for the injury." *Heim*, at ¶ 31.

*Clark*, 1998 ND 153, ¶ 8, 583 N.W.2d 377.

[¶ 12] We find nothing in the Declaratory Judgment Act, N.D.C.C. ch. 32–23, requiring a third-party complaint actually be filed before an insurer can bring a declaratory judgment action to determine the duties to defend or indemnify. Here, the Horners themselves gave notice to Ohio of Fay's potential claims against them and American tendered defense of Fay's medical expense claims to Ohio before commencement of the declaratory judgment action. Under the personal liability section of the Horners' policy, Ohio's duties of defense and indemnification commence "[i]f a claim is made *or* a suit is brought against an insured...." (Emphasis added). Both the personal liability coverage and the medical payments to others sections were subject to the intentional acts exclusion. Not surprisingly, Ohio began investigating Fay's claims, and after learning Brian Horner's actions may have been intentional, Ohio commenced the declaratory judgment action seeking judicial determination of its duties to defend and indemnify the Horners.

[¶ 13] We believe sufficient notice had been provided to Ohio to make it aware claims against its insured existed which could potentially trigger coverage. Under these circumstances, we do not believe Ohio was required to wait until Fay actually sued the Horners before seeking a determination of its duties. Regardless of how Fay or her lawyers characterized Brian Horner's conduct in the complaint, the underlying nature of that conduct would be the same. *See Clark*, 1998 ND 153,

¶ 8, 583 N.W.2d 377. Moreover, we were informed during oral argument Fay commenced an action against the Horners shortly after the declaratory judgment action was commenced, but before the declaratory judgment was entered. Unfortunately, neither of the parties filed a copy of the complaint in this declaratory judgment action or otherwise brought the complaint to the attention of the trial court. If the Horners believed the complaint was essential to proper determination of this declaratory judgment action, they should have made sure the trial court was aware of Fay's complaint.

[¶ 14] We conclude the trial court did not err in ruling on Ohio's duties to defend and indemnify without benefit of the complaint in Fay's underlying action against the Horners.

### B

[¶ 15] Relying on the policy language in this case excluding coverage for "bodily injury ... which is expected or intended by the insured," and relying on cases from other jurisdictions, the Horners assert the trial court erred in failing to require Ohio to prove not only Brian Horner's actions were intentional, but also he intended to cause bodily injury to Fay in order for the intentional acts exclusion to apply. We disagree.

[¶ 16] Our decisions have followed the "classic tort doctrine" for determining an insured's intent for purposes of an exclusion for intentional acts. Annot., *Construction and application of provision of liability insurance policy expressly excluding injuries intended or expected by insured*, 31 A.L.R.4th 957, 991 § 5[d] (1984). In *Hins v. Heer*, 259 N.W.2d 38 (N.D.1977), this Court held an insurer did not have a duty to defend an insured who had been found liable for damages for injuries resulting from the insured's willful, wanton physical assault of a person. In construing a substantively identical intentional acts exclusion clause, we quoted with approval from *Rankin v. Farmers Elevator Mutual Insurance Co.*, 393 F.2d 718, 720 (10th Cir.1968): " 'Where an intentional act results in injuries which are the natural and probable consequences of the act, the injuries, as well as the act, are intentional.' " *Hins*, 259 N.W.2d at 40. We

have followed the *Hins* interpretation of these intentional acts exclusions ever since. *See Clark*, 1998 ND 153, ¶ 30, 583 N.W.2d 377; *Nodak Mut. Ins. Co. v. Heim*, 1997 ND 36, ¶ 26, 559 N.W.2d 846; *Kovash*, 452 N.W.2d at 311–12.

[¶ 17] The Horners assert the cases where we have applied the "classic tort doctrine," such as *Hins* which involved a fight and *Heim* which involved sexual molestation of children, differ from this case because those situations were so nearly certain to produce injury that intent to produce injury could be inferred as a matter of law. The Horners argue Brian Horner's use of a slingshot to shoot a rock at Fay while traveling as a passenger in a vehicle being driven the speed limit is not sufficiently egregious to require an inferred intent to produce injury.

[¶ 18] Various jurisdictions define "concealed weapons" for criminal law purposes as including slingshots, *see, e.g., State v. Tremblay*, 642 So.2d 64, 66 (Fla.Ct.App.1994); *Ricks v. Com.*, 27 Va.App. 442, 499 S.E.2d 575, 576 (1998), while others specifically define slingshots as "dangerous weapons" under criminal law. *See, e.g., Johnson v. State*, 711 A.2d 18, 27 (Del.Supr.Ct.1998); *State v. Davis*, 309 S.C. 326, 422 S.E.2d 133, 144 (1992), *cert. denied*, 508 U.S. 915, 113 S.Ct. 2355, 124 L.Ed.2d 263 (1993). *Compare Vaughn by Vaughn v. Nevill*, 286 Ill.App.3d 928, 222 Ill.Dec. 279, 677 N.E.2d 482, 485 (1997) (although slingshot is not an inherently dangerous weapon, it is dangerous if improperly used). Brian Horner's use of the slingshot in this case is not unlike other situations in which we have applied the *Hins* "classic tort doctrine," and does not militate against inferring an intent to produce injury.

[¶ 19] We have rejected virtually the same argument made by the Horners in both *Kovash* and *Hins*. The Horners have not persuaded us the *Hins* interpretation of the intentional acts exclusion should be altered. We conclude Ohio was not required to show both Brian Horner's actions were intentional and he intended to cause bodily injury to Fay for the exclusion to apply.

## C

[¶ 20]The Horners assert the trial court erred in ruling, as a matter of law, Brian Horner's actions were intentional.

[¶ 21] The trial court reasoned:

Brian Horner picked up the sling shot and shot a stone at Laurie Fay. The stone struck her in the back of the head, causing injur[y]. Thus, Brian Horner's affirmative and intentional act of picking up the sling shot and firing the stone at Laurie Fay led to the consequence of her being struck in the head and suffering a head injury.

In addition, other facts in the record support [Ohio's] contention that Brian Horner's actions were intentional. Prior to shooting a stone at Laurie Fay, Brian Horner was intentionally shooting gophers near the United Hospital in Grand Forks, ... After using the sling shot to shoot a stone at Laurie Fay, Brian Horner also shot at another young woman, Cheryl Hannum, striking her in the shoulder. These acts all took place within a short period of time, and in the same area of town....

Brian Horner's continuous conduct of using a sling shot and shooting at gophers, shooting at Laurie Fay, and shooting at Cheryl Hannum, throughout the day of April 14, 1995, leads this Court to the conclusion that Brian Horner intended to hit Laurie Fay. Her injuries, which are the natural and probable consequence of the shooting, were also intended.

[¶ 22] We agree with the trial court, as a matter of law, Brian Horner's actions were intentional. This conclusion is supported by Brian Horner's interview with the insurance adjuster during which he admitted he was trying to hit Fay, "but not in the head." Firing a slingshot at a human being is an affirmative, intentional action for which a natural and probable consequence is personal injury or harm. Although the Horners argue a genuine issue of material fact is created by Brian Horner's initial ambiguous statement "I wasn't aiming trying to hit her ...," any ambiguity was later clarified by his answers to specific questions during the interview. The Horners presented no affidavit of Brian Horner attempting to clarify state-ments given to the insurance adjuster or stating he did not intend to hit Fay.

[¶ 23] The Horners assert the trial court misapplied the "continuous pattern of conduct" analysis used by this Court in *Heim*, 1997 ND 36, ¶ 32, 559 N.W.2d 846. We need not decide the issue. A continuous pattern of conduct is not necessary to uphold the trial court's decision here. Even without this evidence, the record establishes, as a matter of law, Brian Horner's shooting the slingshot at Fay was an intentional act excluded from coverage under the insurance policy.

## D

[¶ 24] The Horners assert the trial court erred in considering Brian Horner's juvenile court proceedings in arriving at its decision. Ohio submitted to the court the insurance adjuster's interview during which Brian Horner was asked about the juvenile court proceedings and their outcome, as well as law enforcement records relating to the juvenile court proceedings. The Horners argue consideration of this evidence violated N.D.C.C. § 27–20–33(2), which provides:

The disposition of a child and evidence adduced in a hearing in juvenile court may not be used against him in any proceeding in any court other than a juvenile court, whether before or after reaching majority, except for impeachment or in dispositional proceedings after conviction of a felony for the purposes of a presentence investigation and report.

[¶ 25] We reject the Horners' argument the trial court's consideration of Brian Horner's juvenile court proceedings requires reversal for two reasons. First, the record does not show the Horners properly objected to the admission or consideration of the disputed evidence at any point during the trial court proceedings. Counsel for the Horners only argument about the juvenile court proceedings occurred at the summary judgment hearing:

MR. CARTER: I would just like to point out, Your Honor, that we really do not know what happened in juvenile court with the exception of what the punishment was. We do not know whether they were punished for possessing the slingshot, for

shooting the slingshot in the city limits, or exactly what the determination was. And so, I think to conclude just because they were punished, that they were punished because a slingshot was aimed at two human beings, may be stretching it a bit. At this point, we really do not know.

[¶ 26] Issues not raised in the trial court cannot be raised for the first time on appeal. *Cermak v. Cermak,* 1997 ND 187, ¶ 15, 569 N.W.2d 280. A court properly receives evidence if neither a timely objection nor a motion to strike the evidence from the record is made. *Endresen v. Scheels Hardware and Sports,* 1997 ND 38, ¶ 25, 560 N.W.2d 225. The Horners did not object to the admissibility of the juvenile court information or argue the court could not consider the material, but merely asserted this evidence was not entitled to much weight in this case. The Horners' failure to object waives this evidentiary challenge. *Reinecke v. Griffeth,* 533 N.W.2d 695, 702 (N.D.1995).

[¶ 27] Furthermore, there is no indication in the court's opinion Brian Horner's juvenile court records were relied on by the court in deciding Brian Horner acted intentionally. Other than mentioning the juvenile court proceedings and their disposition in its introductory " 'agree[d]' " statement of "undisputed facts," the trial court did not mention the juvenile court proceedings in its analysis of the intentional acts issue. As we have already ruled, the evidence in the record, absent evidence of the juvenile court proceedings, clearly supports the court's ruling Brian Horner's actions were intentional.

[¶ 28] We conclude the error, if any, in the trial court's admission and consideration of Brian Horner's juvenile court proceedings does not require reversal of the summary judgment.

### III

[¶ 29] The summary judgment is affirmed.

[¶ 30] VANDE WALLE, C.J., NEUMANN, SANDSTROM and MESCHKE, JJ., concur.